Filed 6/18/15  In re Tyler S. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re TYLER S., a Person Coming Under the Juvenile Court Law. | B259466 (Los Angeles County Super. Ct. No. DK05720) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CHARLES S., et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Teresa Sullivan, Judge.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Charles S.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant Monica P.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

Charles S. (father) and Monica P. (mother) separately appeal from the dependency court's findings and orders declaring their 13-year-old son Tyler S. (minor) a ward of the court under Welfare and Institutions Code section 300, subdivision (b),[1] and removing him from their custody. Mother also appeals the court's dispositional order requiring monitored visitation, and father appeals from an order requiring him to be tested for drugs. We affirm the appealed orders. Substantial evidence supports the jurisdictional findings and order removing minor from parental custody, and the court's visitation and drug testing orders were not an abuse of discretion.

**FACTS**

Minor lived with mother and father until he was 12 years old. The family first came to the attention of the Los Angeles County Department of Children and Family Services (Department) in 2007 when mother was observed cursing angrily at minor, who was six years old at the time. The Department closed the matter as unfounded. In February 2012, mother was hospitalized after she attempted suicide. The Department investigated, noted that mother's depression was due to being injured at work, and closed the matter as unfounded.

Mother suffers from medical problems and mental health issues. She has epilepsy, multiple sclerosis, and lupus, and has been diagnosed with depression and anxiety. She cries when she is upset or in pain and sometimes experiences mood swings. Minor reports that when his mother has emotional issues, or runs out of medication, she would act "[a]ngry and just kind of like weird. Like pathetic weird . . . . She would act like a little girl. She would cry." According to minor, when mother was depressed she would "[l]ay in bed all day and cry" and when she was anxious, she would "get really freaked out very easily."

_____

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

Mother is strict at home, expecting minor to follow rules such as a curfew, doing homework, and household chores. She would either ground him or take away electronics when he did not follow the rules.

Father has disseminated valley fever, leaving him tired and unable to get out of bed on some days. According to minor, he does not talk much with his father, and when his mother starts yelling and screaming, his father "just walks into the other room or outside."

On February 6, 2014, minor was suspended from middle school after he was caught selling marijuana on campus. When his parents became angry at him, he ran away, ending up at maternal grandmother's house. Mother called the police, and when the police arrived, minor claimed he wanted to kill himself. The police took him to Del Amo hospital, where he was placed on a psychiatric hold. At the time, he reported that his mother yelled at him, and his father occasionally hit him with a closed fist, but did not leave any marks or bruises.

The Department opened a new investigation, and while he was still at Del Amo hospital, minor told a social worker he was selling his maternal aunt's marijuana because he wanted money to buy shoes to replace his current pair, which were too small. Minor explained that both his parents are sick, his paternal grandmother buys him clothes, and his maternal grandmother gives the family food. He has do everything for himself, including cooking, and his mother sometimes "started freaking out and would use her disorder as an excuse" to have him do things for her.

On February 10, 2014, the Department held a team decisionmaking meeting (TDM) with the family, and it was agreed that minor would stay with his paternal grandmother. Mother and father signed a voluntary family reunification agreement with the Department, agreeing to assure minor's physical and emotional needs were met.

After two weeks or a month, minor returned home, in part because he did not like living with his paternal grandparents. The family entered into voluntary family maintenance services beginning March 3, 2014. Mother signed a case plan on March 25, 2014. Things were better between minor and his parents for a while, but then got bad

3

again. Minor ran away at least four times, even though father slept in the living room to prevent minor from running away.

A therapist from Optimist Mental Health reported to the Department concerns about mother's behavior towards minor. According to the therapist, in April 2014 and during a home assessment on May 7, 2014, mother was observed yelling, screaming, and cursing. Mother made several degrading comments about minor in front of him, said she does not care and that she hates minor. The therapist described mother as "volatile," "uncontrollable[,] and openly emotional." The therapist had concerns regarding mother's ability to care for minor, and noted that mother was "unable to come to an agreement as to a safety plan while [minor] was able to."

At a May 9, 2014 TDM at the Department's offices, mother was inconsolable and difficult to calm. She made many negative statements about minor and referred to him as a liar. She admitted she had not seen her own therapist in several months because she lacked transportation, and also admitted she had not sought any mental health treatment for minor. Mother was defensive and tearful during the meeting, and eventually walked out. Although mother claimed she needed a cigarette, she appeared to be hyperventilating outside the Department's office. Paramedics were called and she was taken to the hospital. Minor was taken into protective custody and released to his paternal grandmother.

A Department social worker tried to detain minor to put him in a foster care placement on May 12, 2014, but he ran away, then appeared at the Department's Palmdale office the next day. The Department placed him with a foster parent, filed a dependency petition, and obtained an order detaining minor from his parents. On May 21, 2014, while he was still living in a foster home, minor was placed on a second psychiatric hold because he was suicidal; this time, he was hospitalized for a week before returning to the foster home. He left the hospital with a 30-day prescription for fluoxetine HCL, commonly known as Prozac.

After multiple days of testimony and argument, on September 24, 2014, the court sustained the petition allegations, ordered minor to remain removed from parental custody, and made various orders regarding visitation, drug testing, and services.

**DISCUSSION**

**A.      Jurisdictional Findings**

Parents contend substantial evidence does not support the dependency court's finding that minor is described by section 300, subdivision (b), arguing there was insufficient evidence that minor was at risk of serious physical harm at the time of the hearing. They also argue that even if there was a risk of harm, there was no nexus between parents' conduct and any such risk. Our review of the record reveals substantial evidence that parents have been unable to meet minor's needs, placing him at significant risk of serious physical harm.

We apply the substantial evidence standard of review when examining the sufficiency of the evidence supporting the court's jurisdictional findings. "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) The pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Subdivision (b) of section 300 supports dependency court jurisdiction if a child has suffered, or there is a substantial risk a child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child. To exercise jurisdiction under section 300, subdivision (b), the court must find: "'"(1) neglectful conduct by [the parents]; (2) causation; and (3) 'serious physical harm or

5

illness' to the minor, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.]" (*In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135.)

The court sustained jurisdiction based on three allegations. If even one is sufficient, we may affirm. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

*Mother's emotional issues*

The petition's first count (b-1) alleges mother's history of mental and emotional problems renders her unable to provide appropriate care and supervision to minor. Mother has suffered from depression and anxiety, no doubt aggravated by her multiple serious medical problems. She has multiple sclerosis, lupus, and epilepsy, and has been unable to work since 2007 because of a knee/ankle injury. She admits to having mood swings. Minor testified mother lies in bed all day, and her anxiety makes her "get really freaked out very easily." Once or twice a week, she calls him names like dumb, retarded, asshole, or dick. A therapist observed mother's volatility in the home on May 7, 2014, to be extreme enough to raise concerns regarding mother's ability to safely care for minor. At a TDM on May 9, 2014, the social worker described mother's demeanor as argumentative, defensive, and inconsolable. Indeed, mother testified she asked for the TDM because she needed a break and thought they would be discussing "things that we could do to make things better at home and to help [minor], you know, to ensure his safety and things that were going on. [¶] Instead they turned around and everything turned into how I was failing as a mom, where I was going wrong, why he was running away, what I was doing, my mental health. [¶] And instead of it being addressed towards him and his issues, it became about me and why he was that way." Mother became so agitated she had to leave the TDM and was hospitalized because observers thought she was hyperventilating.

Mother compares her situation to *In re Daisy H.* (2011) 192 Cal.App.4th 713 (*Daisy H.*), where father was emotionally abusing his children by accusing their mother of being a prostitute and calling her sexually derogatory names. Our colleagues in

6

Division One reversed the lower court's jurisdictional finding on the grounds that there was no evidence father's actions placed the minor at risk of physical harm. (*Id.* at pp. 715-717.) However, in *Daisy H.*, there was no evidence of the effect that father's statements had upon the children, and certainly no evidence that either child had ever considered suicide. The fact that minor is depressed and suicidal makes this case fully distinguishable from *Daisy H.* Here, there was substantial evidence supporting the trial court's conclusion that mother's behavior had a "profound effect" on minor, in all probability contributing to his suicidality. Mother's statements and actions have contributed to minor's negative feelings about her. His emotional state is such that he has twice been involuntarily hospitalized as a danger to himself because he was suicidal. Evidence that a minor has considered suicide and remains unwilling to live with his parents until the family has participated in therapy is sufficient to satisfy the requirement that a minor is at risk of serious physical harm to justify jurisdiction.

> *Minor's emotional and behavioral problems and parents' inability to adequately care for and supervise him*

We discuss the petition's second and third counts (b-2 and b-3) together, because the allegations and the evidence are interrelated. Count b-2 alleges that parents are unable to provide minor with ongoing care and supervision due to his mental, emotional, and behavioral problems. Count b-3 alleges that minor suffers from mental and emotional problems, and parents have failed to obtain necessary follow-up treatment and failed to administer his psychotropic medications.

Parents argue that *In re Precious D.* (2010) 189 Cal.App.4th 1251 and *In re Nicholas B.* (2001) 88 Cal.App.4th 1126 (*Nicholas B.*) require reversal, first because there has been no showing of parental unfitness, and alternatively because the Department has not demonstrated a causal link between parents' conduct and minor's problems. We disagree.

7

This case is distinguishable from *In re Precious D., supra,* 189 Cal.App.4th 1251, which reversed a lower court's jurisdictional finding because there was no evidence of parental neglect or unfitness. In that case, Precious (the minor) was continually and repeatedly engaging in sexually promiscuous behavior and was disruptive and incorrigible in her foster placement and at school. However, there was no evidence the mother ever minimized or denied that her daughter had problems. Rather, the mother was fully engaged with the Department in attempting to address the problems, but acknowledged she was ill-equipped to handle Precious's special needs. (*Id*. at pp. 1255-1257.) In contrast here, the evidence and testimony demonstrate that parents did not make reasonable efforts to identify and address minor's emotional needs. Mother admits that other than calling an organization called Penny Lane once as directed to do so by the Department, she did nothing to help minor after he was released from his first hospitalization in February. Instead, she simply continued to wait for the Department to provide help to minor. There is also substantial evidence of father's inaction, even when he was aware of mother's mental health issues.

This case is also nothing like *Nicholas B.*, *supra*, 88 Cal.App.4th 1126. The parents in *Nicholas B.* raised a facial challenge to the petition allegations, and the petition did not allege a causal link between purportedly abusive conduct and the minor's behavioral problems. (*Id*. at pp. 1136-1137.) Here, it was reasonable for the court to infer from the evidence that parent's failure to obtain treatment for minor was linked to his depression and suicidality, and that a suicidal child is at significant risk of physical harm.

Parents attempt to explain away their inaction by emphasizing that they objected to medications for minor because he had only received a five minute evaluation, and they contacted the Department for services, but never received a response. However, the lower court emphasized that its jurisdictional finding was not based on the issue of medications, but rather on the parents' inaction in arranging for any therapeutic help for their son. Since the court's focus is on protecting children, the unfortunate reality is that if a minor's physical well-being is at risk, there is a basis for jurisdiction, regardless of

8

the parents' explanation for their failure to take action. In the end, minor needed psychological help, his parents were either unwilling or unable to provide it, and their failure placed him at risk of harm. Based on this evidence, the court could reasonably conclude that absent court jurisdiction, the fraught relationship between minor and his parents would continue to deteriorate, posing an unacceptable risk that minor's dangerous feelings and behaviors would continue, potentially leading to death by suicide.

**B.      Dispositional Orders**

*Removal order*

Both parents contend that if we reverse the court's jurisdictional findings, we must also reverse its order removing minor from parental custody. Because we conclude that substantial evidence supports the court's order sustaining the petition allegations, parents' only contention against the court's removal order also fails.

*Mother's monitored visitation*

Mother contends the court erred when it ordered her visitation with minor to be monitored, pointing to the fact that minor indicated at the hearing he was ready for unmonitored visitation. "We review an order setting visitation terms for abuse of discretion. [Citations.] We will not disturb the order unless the trial court made an arbitrary, capricious, or patently absurd determination. [Citation.]" (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) To facilitate reunification, visitation should be frequent, but flexible to respond to "the changing needs of the child and to dynamic family circumstances." (*In re S.H.* (2003) 111 Cal.App.4th 310, 317.) In addition, although a child's input is to be considered when making visitation orders, it is not the sole factor in such a decision. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 51.) In light of mother's actions during the May 7, 2014 in-home assessment, the court could reasonably

9

conclude that mother's inability to control her hurtful words and actions even with a neutral third party present warranted monitored visitation, until the family had enrolled in family therapy. The monitored visitation order was not an abuse of discretion.

*Father's drug testing*

Father contends the court's order of five drug tests was an abuse of discretion because there were no allegations or evidence of drug abuse. Section 362, subdivision (d) states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citation.]" (*In re A.E.* (2008) 168 Cal.App.4th 1, 4.)

The reporter's transcript reflects that mother's counsel inquired about the basis for the drug testing requirement, but father's counsel neither inquired nor objected to the order. By failing to object to the drug testing requirement, father forfeited his right to raise the issue on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court].) Even if father had objected, the court did not abuse its discretion in ordering drug testing for father. The dependency case was initiated after minor was suspended from school for selling marijuana he had stolen from his aunt while she was at his maternal grandmother's house, and father was often unable to leave his bedroom because of medical issues. It is not patently absurd for the court to order drug testing to eliminate drug use as one of the factors "behind the complex web of issues in this family's home."

10

## DISPOSITION

The dependency court's jurisdictional findings and dispositional orders are affirmed.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


KIRSCHNER, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.