Filed 10/30/15  In re Joshua C. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSHUA C., A Person Coming Under the Juvenile Court Law. | B260673 |
| COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK91922) |
| Petitioner and Respondent, | |
| v. | ORDER MODIFYING OPINION; [NO CHANGE IN JUDGMENT] |
| JOHN C., | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed on October 22, 2015, and not certified for publication, be modified as follows:

1.      On page 6, lines 23-25 read as follows:

"In its October 30, 2014 status review report, the Department reported that father had yet to enroll in individual therapy, submit to any drug tests, or attend a 12-step program."

It should read:  "In its October 30, 2014 status review report, the Department reported that father had yet to enroll in individual therapy, submit to any drug tests, or complete a 12-step program."

Appellant's petition for rehearing filed October 26, 2015 is denied.  The foregoing modification does not change the judgment.


_____

**EDMON, P. J.**          **LAVIN, J.**          **JONES, J. (Assigned)**

Filed 10/22/15  In re Joshua C. CA2/3 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSHUA C., A Person Coming Under the Juvenile Court Law. | B260673 |
| COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Petitioner and Respondent,<br><br>        v.<br><br>JOHN C.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK91922) |

APPEAL from an order of the Superior Court of Los Angeles County, Julie F. Blackshaw, Judge.  Reversed in part; affirmed in part.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Megan T. Shirn, under appointment by the Court of Appeal, for Minor and Respondent.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Petitioner and Respondent.

*INTRODUCTION*

In this second appeal involving the same family,[1] John C. (father) appeals from an order that terminated dependency jurisdiction and granted J.C. (mother) legal and physical custody of their son Joshua. As part of its judgment, the juvenile court issued a family law order providing father supervised visitation with Joshua "in a therapeutic setting in consultation with Joshua's therapist." Father argues the visitation order unlawfully delegates to mother, Joshua, and Joshua's therapist the discretion to refuse visitation. He also argues the court abused its discretion by not issuing a collateral order requiring Joshua to participate in conjoint counseling with him. We reverse the portion of the family law order addressing father's visitation and remand the matter to the juvenile court to conduct a new hearing on the issue of visitation. We affirm in all other respects.

*FACTUAL AND PROCEDURAL SUMMARY*

1.    *Initiation of Joshua's Dependency Proceedings*

In February 2012, the Department of Children and Family Services (Department) received a report that father had sexually abused then seven year-old Joshua. Mother reported the alleged abuse shortly after father informed her that he planned to move out of the house and wanted joint custody of Joshua. During the Department's investigation, Joshua reported that father had touched his penis several times and had "inserted his [father's] hand" into Joshua's anus. Joshua also reported that his parents sometimes spanked him. Father denied that he had inappropriately touched Joshua's private parts, but admitted that he had spanked Joshua with a belt. On February 22, 2012, the Department filed a dependency petition on Joshua's behalf alleging father had

---

[1]    In the first appeal, mother appealed the juvenile court's dismissal of allegations that father sexually abused their then seven year-old son after the court sustained an allegation that father inappropriately disciplined their son with a belt. We dismissed mother's appeal for lack of standing. (*In re Joshua C.* (Dec. 9, 2014, B251697 [nonpub.]).)

sexually and physically abused him.  (Welf. & Inst. Code, § 300, subds. (a), (b), & (d).) [2] Shortly after the Department filed the petition, father moved to Sacramento.

In March 2013, Joshua entered therapy to address behavioral issues that mother believed stemmed from father's alleged sexual abuse.  At this point, Joshua had stopped communicating with father, and he would often become upset when asked about father.

On August 8, 2013, after hearing testimony from Joshua's therapist, mother, father, and father's expert witness, as well as reviewing the report prepared by the psychologist who had conducted the forensic interview, the court sustained the physical abuse allegation under section 300, subdivision (b),  but dismissed the sexual abuse allegations.  Notably, the court found Joshua's testimony about the sexual abuse allegations unbelievable, nonspecific, and uncorroborated by other evidence.

On August 27, 2013, the court removed Joshua from father's custody and placed him with mother.  The court ordered the Department to provide father enhancement services, including conjoint counseling with Joshua and mother once a month, and awarded father visitation with Joshua via Skype twice a month.  The court ordered father to enroll in individual counseling to help rebuild his bond with Joshua and address appropriate forms of discipline.  The court also ordered father to submit to random drug testing or participate in a 12-step substance-abuse program.  The court ordered Joshua to begin seeing a different therapist after father raised concerns that Joshua's first therapist would continue to focus on issues related to the dismissed sexual abuse allegation.  The court set a review hearing pursuant to section 364 for February 25, 2014.

2.     *Post-Disposition Events*

On September 5, 2013, a social worker contacted father about his case plan.  The social worker told father he needed to enroll in individual counseling and begin submitting to drug tests or attending a 12-step program.  The social worker also explained father could not begin visiting with Joshua until mother found a suitable

---

[2]     All further statutory references are to the Welfare and Institutions Code.

3

therapist. The social worker provided father a phone number to call about receiving low- or no-cost services and counseling near Sacramento.

On September 26, 2013, father complained to the Department that he had yet to have a monitored visit with Joshua. The Department explained that mother had recently found a new therapist for Joshua and that father would be able to begin visiting with Joshua once Joshua's therapist determined he was ready.

On October 7, 2013, mother informed the Department that Joshua had started attending therapy sessions. She also reported that at least three times a week she would ask Joshua if he wanted to speak to father, and each time Joshua would refuse. Joshua told mother he did not want to speak to father because father "touched" him.

Two days later, Joshua's therapist reported that Joshua was not ready to begin conjoint counseling or visiting with father. Joshua was still unwilling to visit with or speak to father, and the therapist believed that requiring him to participate in counseling or visitation with father would be detrimental to his well-being.

On October 29, 2013, mother reported that Joshua continued to refuse to speak to father. Every time she asked Joshua if he wanted to speak to father, Joshua became very upset, once screaming, " 'He touched me. Why doesn't [father] apologize? Say he's sorry?' "

In November 2013, father's counsel contacted Joshua's therapist to ask when father could start participating in conjoint counseling and visitation with Joshua. Joshua's therapist told father's counsel that Joshua continued to refuse to visit with father through Skype. The therapist also explained that, based on his unwillingness to speak to or visit with father, Joshua was not ready to begin conjoint counseling.

In December 2013, a social worker privately interviewed Joshua. Joshua said that he was doing "good" at home and he liked his new therapist. When asked if he had spoken to father since the disposition hearing, Joshua responded that he did not want to talk to him.

In January 2014, father emailed the Department complaining about not receiving any visits with Joshua or being able to participate in any conjoint counseling sessions

4

with him. Father explained that he had kept records of every attempt he made to contact Joshua through Skype, and that it had been nearly two years since he last spoke to his son. Father was also concerned that Joshua was still receiving therapy for sexual abuse.

The Department's social worker responded to father's email, explaining that Joshua had refused to have any contact with father since the disposition hearing. The social worker also explained that Joshua would not be able to participate in conjoint counseling until he was cleared to do so by his therapist. The social worker reminded father that the court had ordered him to enroll in individual therapy, attend a 12-step program, and begin submitting to random drug tests.[3]

On January 27, 2014, Joshua's therapist sent the Department a letter explaining Joshua's progress in therapy. Joshua continued to refuse to discuss father, often saying, " 'I don't have a father' " or " 'I'll never speak with him.' " The therapist explained that Joshua was not yet able to address his negative feelings toward father. The therapist recommended that he not participate in conjoint counseling until he developed skills to cope with his feelings and regulate his emotions.

3.  *Review Hearings*

Prior to the February 25, 2014 review hearing, the Department reported that father had yet to provide any information concerning his progress with his court-ordered case plan. The Department recommended the court discontinue father's services and terminate jurisdiction. The court continued the review hearing to May 7, 2014 for a contested hearing on whether the court should terminate its dependency jurisdiction over Joshua.

In March 2014, father contacted the Department to set up a Skype visit between Joshua and Joshua's paternal grandmother. Father explained that he wanted Joshua to visit with his grandmother before she passed away and that she was too frail to travel to Los Angeles to physically visit with Joshua. Joshua refused to visit because he believed his grandmother was "on father's side." He later said that he felt bad about his

---

**3**     Father's court-ordered case plan actually required father to attend a 12-step program or submit to random drug testing, not both.

5

grandmother's health and would consider writing her a letter wishing her well, but he refused to visit with or speak to her.

In April 2014, father sent the Department another email complaining about not receiving visitation with Joshua. He asked why the Department had yet to organize visits through Skype and explained that he had not communicated with Joshua since the disposition hearing. He also asked why the Department had yet to set him up with counseling, drug testing, and a 12-step program. The Department's social worker responded to father's email. The social worker explained that the Department had already informed father in September 2013 that it could not find services or a counseling program for him because he lived outside of the Los Angeles area. The social worker told father that it was his, and not the Department's, responsibility to enroll in suitable classes and counseling programs. The social worker also told father that Joshua's therapist, and neither the Department nor father, has the discretion to determine when Joshua is ready to participate in conjoint counseling.

Addressing father's concerns about visitation, the social worker explained that Joshua would not be required to visit with father until he was cleared to do so by his therapist. The social worker told father, "We cannot force the child to participate in visits if he refuses."

The court continued the contested review hearing scheduled for May 7, 2014 to October 30, 2014 to provide additional time for Joshua to attend therapy and to allow father to enroll in individual therapy to address rebuilding his relationship with Joshua, as required by his court-ordered case plan.

In its October 30, 2014 status review report, the Department reported that father had yet to enroll in individual therapy, submit to any drug tests, or attend a 12-step program. Father explained that he did not have the time to participate in any services because he was his mother's sole caretaker and he needed to look after her 24 hours a day.

6

### 4.    *Termination of Joshua's Dependency Proceedings*

At the contested review hearing, father argued the court should continue jurisdiction.  He also requested the court order Joshua to participate in conjoint counseling so that he and Joshua could rebuild their relationship.  The court denied father's request, explaining that it would never require a child to participate in conjoint counseling with an offending parent until the child's therapist believed the child was prepared to do so.  The court then terminated jurisdiction and granted mother legal and physical custody of Joshua.

With respect to visitation, father's counsel requested the court continue its prior order requiring Joshua to participate in twice-a-week monitored visits through Skype.  The court denied father's request, explaining that it did not want to force Joshua to participate in visitation if he refused.  Specifically, the court stated that "[i]f the child refuses, this court is not going to order mandatory visitation with father."  Nevertheless, the court issued a visitation order providing that father have supervised visitation with Joshua "in a therapeutic setting in consultation with Joshua's therapist."

## DISCUSSION

### 1.    *Applicable Law*

When a juvenile court returns a dependent child to his or her parent's custody and terminates its jurisdiction, it may issue a family law order governing custody and visitation.  (§ 362.4; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358 (*Kenneth S.*).)  In crafting such an order, the court must act in the child's best interests. (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)  The court must look to the totality of the circumstances, and it is not restrained by any preferences or presumptions, such as a parent's entitlement to custody.  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

As part of its family law order, the juvenile court may impose conditions or issue collateral orders to further define the rights to visitation and custody if such conditions or orders are reasonable under the circumstances of the case.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 204 (*Chantal S.*); *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1166.)  For example, the court may issue an order conditioning custody or visitation on

7

a parent's participation in a counseling program addressing the parent's problems that continue to pose a risk to the child's well-being. (*Chantal S.*, *supra*, 13 Cal.4th at p. 204.) Once issued, the family law order becomes part of the family court proceeding concerning the same child and remains in effect until modified or terminated by the family court. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799.)

We review a juvenile court's family law order for abuse of discretion. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456.) We will not disturb the order unless the court exceeded the bounds of reason. (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.) Put another way, if we can draw two or more reasonable inferences from the facts, we have no authority to substitute our discretion for that of the juvenile court. (*Ibid.*)

2. *The Juvenile Court Did Not Abuse its Discretion When it Did Not Order Joshua To Participate in Conjoint Counseling*

At the contested review hearing, father's counsel requested the court issue an order requiring Joshua to participate in conjoint counseling because father believed he would never be able to rebuild his relationship with Joshua until they participated in counseling together. The court denied father's request, explaining that it would never order a dependent child to participate in conjoint counseling with an offending parent without the approval of the child's therapist. Father contends the court abused its discretion when it refused to order Joshua to participate in conjoint counseling. We disagree.

There was ample evidence before the court that Joshua was not prepared to participate in conjoint counseling. After the Department filed the petition, Joshua refused to have any form of contact with father, often telling his mother and therapist that he did not want to see or speak to father because he believed he had been abused by him. Even if, as father argues, Joshua's beliefs about father's conduct are not entirely grounded in reality, the emotions he experiences when talking about father are real. The court was well within its discretion to not force Joshua to participate in counseling with father until Joshua's therapist determined Joshua had adequately addressed those issues.

8

Further, as its name suggests, conjoint counseling requires at least two people to participate. Accordingly, father needed to show that he was prepared to engage in counseling with Joshua. He failed to do so. As of the contested review hearing, father had yet to enroll in individual counseling aimed at rebuilding his relationship with Joshua and addressing his inappropriate use of discipline, as required by his case plan. Father also had yet to make substantial progress in his other court-ordered services. Therefore, it was more than reasonable for the court to conclude that mandatory conjoint counseling was not appropriate until father took adequate steps to address the issues that led to Joshua being declared a dependent of the court.

3. *The Visitation Order Unlawfully Delegates the Court's Judicial Authority*

The power to determine the right and extent of visitation by a noncustodial parent resides with the court alone and may not be delegated to third parties (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 (*T.H.*).) This rule applies to family law orders issued when dependency jurisdiction is terminated. (*Ibid.*)

The court abuses its discretion when it allows a third party, including the child, the therapist, the custodial parent, or the social worker, to determine whether any visitation will occur. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317 (*S.H.*).) While the court may delegate to the social worker the responsibility for managing the details of visits, such as their time, place, and manner, it may not delegate to any third party the discretion to determine the frequency and length of visits because to do so allows the third party to decide whether visitation will occur. (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314; see also *T.H.*, *supra*, 190 Cal.App.4th at pp. 1123-1124 [court abused its discretion when it issued a visitation order that provided for visitation to occur as "determined by the parents" because the order allowed either parent to refuse visitation]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48 (*Julie M.*) [court abused its discretion when it issued an order that gave the children option of not attending visits because such an order allowed the children "absolute discretion to decide whether [their mother] could visit with them"]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757-758

9

(*Jennifer G.*) [visitation order improper because it failed to specify the frequency and length of visitation].)

Father contends the court's visitation order is illusory because it delegates to mother, Joshua, and Joshua's therapist the discretion to refuse visitation. Specifically, he argues the visitation order is improper because it fails to specify the frequency and length of visitation, effectively allowing mother, Joshua, and Joshua's therapist to decide whether visitation actually will occur. We agree that the order is illusory because it fails to ensure that father will be able to visit with Joshua.

If the court grants visitation, "it must . . . ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur." (*S.H.*, *supra*, 111 Cal.App.4th at p. 313.) The visitation order in this case is inadequate because it does not establish a minimum number of visits father is entitled to receive each month, specify when visitation should begin, or establish any conditions that must be satisfied before visitation may begin. (See *In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690-1691 [visitation order was improper because it provided the child services agency with no guidance as to when, how often, and under what circumstances visitation should occur].) Although the order provides that visitation is to occur "in consultation with Joshua's therapist," this vague language does not provide the Department or Joshua's therapist any guidance as to how visitation should be carried out. (See *Julie M*, *supra*, 69 Cal.App.4th at p. 51 [at a minimum, the juvenile court should provide broad guidelines as to the prerequisites, limitations, or requirements of visitation].) In other words, while the order presumes father has a right to visitation with Joshua, it fails to provide any assurance that visitation will actually occur.

The Department acknowledges the court's written visitation order does not specify the frequency of visits or provide any guidelines under which visitation should be carried out, but it contends the court made an oral order during the contested review hearing requiring Joshua to be made available twice a week for visits with father. We disagree with the Department's interpretation of the court's order. Although the court contemplated requiring Joshua to visit with father twice a week after father's counsel

requested such an order, the court later denied counsel's request. At the conclusion of the contested review hearing, after counsel made another request for a visitation order requiring Joshua to be made available twice a week for visitation, the court responded, "The court does not want to make an order forcing Joshua to do this. . . . Counsel did not come up with any kind of language that would solve the dilemma of Joshua's unwillingness to do so."

The Department relies on *In re Alexis W.* (1999) 71 Cal.App.4th 28 (*Alexis W.*) to argue the court's visitation order adequately defines the essential terms of father's right to visitation. The Department argues the visitation order in this case is proper because it is more specific than the visitation order issued in *Alexis W.*, which provided only "reasonable visitation for mother." (*Id*. at pp. 35-36.) *Alexis W.* does not support the Department's position because the adequacy of the visitation order was never considered in that case. (See *Id*. at pp. 36-37.) Rather, the mother challenged only the juvenile court's denial of her section 388 petition to modify the court's custody order. (*Ibid*.) Cases are not authority for positions not considered. (*In re I.S.* (2002) 103 Cal.App.4th 1193, 1198.)

Joshua relies on *Chantal S.*, *In re Danielle W.* (1989) 207 Cal.App.3d 1227, and *Cole Y., supra,* 233 Cal.App.4th 1444 to argue the court's visitation order is proper. Joshua's reliance on those cases is misplaced.

In *Chantal S.*, the California Supreme Court upheld a visitation order that provided the father's visitation was "to be facilitated by [the child's] therapist," and required the father to first attend and make satisfactory progress, as determined by his therapist, in individual psychotherapy before he could begin visiting with his child. (*Chantal S.*, *supra*, 13 Cal.4th at pp. 202, 213-214.) The father in *Chantal S.* argued the visitation order unlawfully delegated to the child's and the father's therapists discretion to determine whether visitation will occur. (*Id*. at p. 213.) In upholding the order, the court observed that it provided no discretion to the child's therapist, but rather it "mandate[d]" that the child's therapist comply with its terms once certain conditions were met. (*Ibid*.) With respect to the portion of the order concerning father's therapist,

11

the court held the juvenile court was authorized to establish conditions to protect the child's well-being, the satisfaction of which would trigger visitation. (*Id*. at pp. 213-214.)

*Chantal S.* is distinguishable. Unlike the order in *Chantal S.*, the order in this case does not set forth any guidelines for visitation or establish any conditions the satisfaction of which will guarantee the start of visitation. Although the court discussed at the May 7, 2014 review hearing that father needed to enter individual therapy before Joshua could be asked to participate in conjoint counseling, the court never stated it would require father to participate in therapy or complete any programs before allowing him to visit with Joshua, and it never included such a provision in its written order.

*Cole Y.* is inapposite, as it does not involve the same issues raised in father's appeal. In *Cole Y.*, the Court of Appeal reversed the juvenile court's family law order because it improperly conditioned the family court's ability to modify custody and visitation on father's completion of certain programs and counseling. (*Cole Y.*, *supra*, 233 Cal.App.4th at pp. 1455-1457.) Whether the juvenile court's visitation order improperly delegated judicial authority to a third party was not addressed in *Cole Y.* (*Id.,* at pp. 1451-1457.)

Finally, our decision is consistent with *Danielle W.* There, this Court upheld a visitation order that stated: " 'Visitation will be at [the child services agency's] discretion and the child[]'s discretion. . . . [I]t can be at a location selected by the Department . . . . And it should be a site where the Department . . . should consider the convenience of all parties.' " (*Danielle W.*, *supra*, 207 Cal.App.3d at p. 1233.) This Court held that, under the circumstances of the case, the visitation order did not delegate judicial power to the children, but rather it "mean[t] the children should not be forced to visit with their mother against their will and in no way suggest[ed] that the minors [were] authorized to do more than express their desires in [that] regard." (*Id*. at p. 1237.) With respect to the child services agency, this Court held that the order "simply authorizes the Department to administer the details of visitation." (*Ibid*.)

The order in this case is improper for reasons not at issue in *Danielle W.*  Unlike the order in *Danielle W.*, the order here fails to set forth guidelines for carrying out visitation or provide any assurances that visitation will ever occur.  For those reasons, the order in this case is inadequate.  (See *S.H.*, *supra*, 111 Cal.App.4th at p. 319; *Jennifer G.*, *supra*, 221 Cal.App.3d at p. 757 ["we find the orders improper and inadequate in that they determine neither whether the parents have a right to visitation nor, assuming that such a right was intended, the frequency and length of visitation"].)  Because the visitation order is improper, we remand the matter to the juvenile court to conduct a new hearing on the issue of visitation.  In doing so, we are cognizant of the difficulties posed in a case such as this when a great deal of time has passed and a child refuses to visit with a parent who sincerely wishes to maintain contact in an effort to rebuild a damaged relationship.  However, even under such admittedly problematic circumstances, given the passage of time and Joshua's consistent resistance to visitation, it may be appropriate for the juvenile court to further consider if, under the circumstances and in light of current information, any visitation would be detrimental to Joshua.  Accordingly, in conducting the hearing, the juvenile court may consider new evidence or changed circumstances that may have occurred since the October 30, 2014 contested review hearing.  (See *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1508; *In re C.M.* (2014) 232 Cal.App.4th 1394, 1405.)

## *DISPOSITION*

The portion of the October 30, 2014 family law order concerning father's visitation with Joshua is reversed, and the matter is remanded to the juvenile court to conduct a new hearing on the issue of visitation. The family law order is affirmed in all other respects.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:

EDMON, P. J.

JONES, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14