Filed 1/22/16  In re Luna A. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re LUNA A., A Person Coming Under Juvenile Court Law. | B261761 |
| | (Los Angeles County Super. Ct. No. DK06309) |
| LOS ANGELES COUNTY DEPARTMENT OFCHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| FRANCIS A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Commissioner.  Affirmed.

Frank H. Free, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickam, County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Minor.

_____

Appellant Francis A. (father) appeals from an order denying him visitation with his daughter Luna A. Finding no abuse of discretion, we affirm the order.

## FACTUAL AND PROCEDURAL SUMMARY

Father and mother, I.W., have one child together, Luna. Luna was born in August 2013 and lived with mother and her two half-siblings. Father occasionally stayed with them. Luna came to the attention of the Department of Children and Family Services (department) in response to a domestic violence incident between father and mother on April 14, 2014. Father and mother were engaged in a verbal altercation, when father, who was holding Luna, kicked the door to mother's house and shoved mother. Mother reported to law enforcement that this was not an isolated incident of domestic violence; rather father had assaulted her on numerous occasions over the past four years. During the social worker's investigation, Luna's sibling Lucia denied any abuse by mother or father but said that when her mother was pregnant with Luna, father "'squished [Lucia] in his legs and threw [her] around the bed with his legs. [She] cried after he threw [her]. It hurt [her].'" Mother signed a safety plan with the department, agreeing to obtain a restraining order against father and not allow father into her home.

On July 9, 2014, the court granted the department a removal order to detain Luna from mother and father. Subsequently, the department filed a Welfare and Institutions Code section 300[1] petition alleging Luna was at risk of serious physical harm. The department cited as reasons for continued detention the April 14, 2014 domestic violence incident between father and mother, an altercation father had with the maternal grandmother, and mother's failure to comply with the safety plan; mother did not obtain a restraining order against father, continued to allow him to reside in her home, and minimized the severity of the incidents of domestic violence between her and father. Luna was placed with her godmother and maternal aunt, Susan G. At the July 14, 2014 detention hearing, the court found a prima facie case for the detention. Father was denied

---

[1]     Subsequent section references are to the Welfare and Institutions Code.

visits pending further order of the court. The court continued the matter to July 23, 2014. At that hearing, the court granted father monitored visits at the department's office unless visitation was precluded by a restraining order.

Subsequently, at the August 21, 2014 hearing, the court addressed jurisdictional and dispositional issues. In its report to the court, the department cited incidents similar to those provided to support continued detention, including father striking mother with his fists and pushing her, threatening to assault her, and striking her during her pregnancy with Luna. The report concluded that "[t]he combination of the . . . father's history of erratic and violent behavior (which is possibly exacerbated by his substance abuse), his lack of cooperation with DCFS, his violent physical assault of child Lucia, the domestic violence with mother . . . , and Luna's young age severely impairs his ability to provide ongoing care, supervision, protection and control of Luna." Father pled no contest to the petition. The court granted mother's request for a temporary restraining order against him. Luna was not included in the order and the court granted the department's request for discretion to liberalize father's visits with Luna. The matter was continued to January 23, 2015.

By the time of the next hearing, two additional incidents of domestic violence had occurred. According to the department's last minute information reports, the first occurred in a CVS pharmacy parking lot. Mother reported to an officer that she and father had made a plan to meet at the CVS because father owed her money. When mother refused to let father inside her vehicle, he "extracted a kitchen knife from his right pant pocket." Mother sprayed father with pepper spray. Father then pushed her into her vehicle and began striking her. Mother reported that he "grabbed her by the neck with one hand as he stood over her and struck her several times on her face and head with a closed fist." Before leaving the area, father attempted to stab her with the kitchen knife. The officer observed redness and swelling on mother's neck and face, and although the officer did not see any stab wounds, he observed a "4 1/2 inch blade belonging to a kitchen knife" on the ground next to the vehicle.

3

The second incident occurred outside the paternal grandmother's home. Mother had driven there to drop off property belonging to the paternal grandmother. Mother was about to exit her vehicle when father walked up and yelled at her to get out and talk to him. When mother stayed in her vehicle, father punched the window, causing the glass to fall off its track. He then reached through the window and punched mother in the face. Next, father opened the door, dragged mother out of the vehicle, and proceeded to slam her head onto the ground. Before leaving, father punched and kicked mother. A neighbor witnessed the incident and called the police. Paramedics treated mother at the scene. She suffered a "2-3 inch circular hematoma on the left side of her head," "visible lacerations and bruising to [the] left side of her body," along with other lacerations on her fingers and bruises on her legs.

The last minute information for the court also documented the social worker's attempts to schedule an appointment with father to discuss visitation instructions and to arrange visitation. These efforts were unsuccessful; when the social worker was able to contact father, he stated: "'I wave the white flag. I'm not doing this. I don't have time for this. Besides, [mother] has brought Luna to see me.'" Father also reported that he had participated in four therapy sessions but was terminated for rescheduling his appointments too many times, that he had not found a parenting program that was free of charge, and that the batterers' intervention program was too costly for him at that time.

At the January 23, 2015 hearing, the court declared Luna a dependent of the court under section 300, subdivisions (a), (b), and (j)[2] and ordered the department to provide

---

[2]     Section 300, subdivision (a) provides: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." Section 300, subdivision (b) provides: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care

4

reunification services to father and mother. The court noted that the department recommended monitored visitation for father. Luna's counsel requested that father either have no visitation or monitored visitation at the department's offices because of concern that father's aggressive behavior could be directed toward Luna. The caregiver, Luna's maternal aunt, asked to be heard by the court. She requested that father receive no visits with Luna. Although she admitted she had not witnessed father being violent with Luna, she said she had witnessed him being "very violent, verbally abusive, and physically abusive" and noted that he had been violent while holding Luna.

After finding by a preponderance of the evidence that visitation would be detrimental to Luna, the court ordered that father have no contact or visitation with her. The court explained that the evidence is "overwhelming that [father] has significant issues with anger as well as perpetration of domestic violence. His verbal threats to mother . . . are vile and violent, threatening to kill, foul language. His conduct is unpredictable and can become volatile in just a moment. . . . She's just a year old, and he has little or no control whatsoever over his conduct."

This timely appeal followed. The department submitted a letter stating that "[b]ecause the juvenile court's order denying appellant visits with [Luna] was not pursuant to its recommendation, [the department] will not file a brief supporting the juvenile court's order. The appropriate respondent is [Luna]."

## DISCUSSION

"A juvenile court's determination as to whether parental visits are in the best interests of a dependent child may be reversed only upon a clear showing of abuse of discretion." (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When

---

for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." Section 300, subdivision (j) provides: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

"Visitation is a necessary and integral component of any reunification plan" (*In re S.H.* (2003) 111 Cal.App.4th 310, 317); however no visitation order shall jeopardize the safety of the child. (§ 362.1, subd. (a)(1)(B).) The court must focus on the best interests of the children "and on the elimination of conditions which led to the juvenile court's finding that the child has suffered, or is at risk of suffering, harm specified in section 300." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1376; see also *In re S.H.* (2003) 111 Cal.App.4th 310, 317 ["the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense"].)

Appellant argues the court failed to explain how father could have endangered Luna during supervised visits. The court supported its finding by explaining that father's conduct is unpredictable and volatile and that because Luna is only a year old, visitation would be detrimental since father has little or no control over his conduct. There is sufficient evidence in the record to support the court's finding. Despite having an open dependency court case that arose out of a domestic violence incident, father perpetrated two subsequent egregious incidents of domestic violence on mother in public places. At the July 23, 2014 hearing, the court ordered monitored visitation, yet father's violent behavior escalated. In January 2015, father attacked mother on two separate occasions. In the first incident, he grabbed her neck, struck her several times on her face, and attempted to stab her with a kitchen knife. Less than a week later, in a second incident, he punched her in the face, dragged her out of her vehicle, slammed her head into the ground, and punched and kicked her.

Based on this information before the court, we find the juvenile court did not abuse its discretion in ordering no visitation for father at the disposition hearing because it was reasonable for the court to infer that father's escalating levels of violence posed a threat to Luna's safety, even during a monitored visit.

## DISPOSITION

We affirm the order of the juvenile court.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.