Filed 5/23/23 In re Samantha M. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re SAMANTHA M. et al., Persons Coming Under the Juvenile Court Law. | B317547 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TIFFANY J., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP05003E–F |

APPEAL from orders of the Superior Court of Los Angeles County, Hernan D. Vera, Judge. Affirmed and remanded with directions.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

**INTRODUCTION**

Tiffany J. (mother) appeals from the juvenile court's orders terminating dependency jurisdiction over her daughters, Samantha M. and Savanna J. Mother contends the court erred when it issued its exit orders by: (1) requiring her visits with Samantha and Savanna to be supervised by a professional monitor to be paid for by mother; and (2) failing to specify in its exit orders how frequently mother is entitled to visit Savanna, essentially delegating to Savanna's father the authority to determine if mother can visit her daughter. We affirm the court's orders terminating jurisdiction but remand the matter with directions for the court to correct the portion of Savanna's exit order addressing mother's visitation rights.

**FACTUAL AND PROCEDURAL SUMMARY**

Mother has three children, each with different fathers: Amari M. (born August 2008),[1] whose father is Phillip M.; Samantha (born May 2013), whose father is Anthony J.; and Savanna (born March 2018), whose father is Dontae J.

This case arose out of a May 2021 incident in which mother and her boyfriend, Deandre K., argued and fought each other while Amari was inside the home, Samantha was outside playing, and Savanna was visiting Dontae. When the Department of Children and Family Services (Department) interviewed Amari following the incident, the child reported that he and his sisters no longer attended school and that mother often left them home alone at night while she went to work.

---

[1] Mother does not challenge any of the court's orders concerning Amari.

On May 12, 2021, the Department filed a dependency petition on the children's behalf, alleging that mother's history of domestic violence and her practice of leaving the children alone without adult supervision placed the children at risk of serious physical harm (Welf. & Inst. Code,[2] § 300, subds. (a), (b), & (j)). The court detained the children from mother and released Samantha and Savanna to their fathers' custody. The court granted mother three monitored visits a week, for three hours each visit, with the children.

In late May 2021, mother enrolled in anger management, domestic violence, and parenting classes. During her first month in the program, mother completed 5 of 20 required domestic violence classes, and 5 of 15 required parenting classes. According to mother's case manager, mother completed her homework assignments and "was proactive and very interactive" during classes.

Mother's visits with the children were often problematic, however. According to Anthony, mother coached Samantha and yelled, cursed, and argued in front of the child during one visit. During another visit shortly after the detention hearing, mother took Savanna from the child's paternal grandmother's home without the grandmother's or the Department's permission. After leaving the grandmother's home, mother drove Savanna without putting the child in a safety harness, allowing the child to stand in the front passenger seat while the car was moving.

The monitor for several of mother's visits, Israel L., who was mother's friend and pastor, sometimes allowed mother to

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

visit the children unsupervised. For one visit, Israel took Samantha to mother's home without the Department's knowledge. And, during at least two visits with Samantha, Israel left mother and the child alone together. Israel also sometimes picked the children up at their caregivers' homes, whose addresses were supposed to remain confidential.

The Department filed a first amended petition on July 14, 2021, adding allegations that, among other things: (1) mother failed to provide Amari and Samantha a consistent formal education; and (2) mother endangered Savanna by abducting the child and driving without securing her in a safety harness.

In late July 2021, the Department approved Kamry M., another one of mother's friends, to supervise mother's visits with the children. Kamry signed an acknowledgement stating that she is familiar with the rules for monitoring mother's visits, including prohibiting visits at mother's home and not allowing mother to be present when the children are picked up and dropped off for their visits. Mother refused to sign a similar acknowledgement, claiming she did not agree with the rule prohibiting her from visiting the children at her home.

In August 2021, mother followed Kamry to the pick-up and drop-off locations for Samantha and Amari. According to Samantha, Kamry was aware that mother followed the monitor to those locations. Later that month, after Kamry informed the Department that she could no longer supervise mother's visits because of her work schedule, the Department approved Israel to resume serving as mother's visitation monitor. The Department also asked the court to appoint a professional monitor or a Department staff member to supervise mother's visits.

4

Amari's caregiver reported that Israel was sometimes late picking up and dropping off the child. According to the caregiver, Amari would often have emotional outbursts or become physically aggressive when he returned from visits with mother.

In September 2021, mother began participating in individual counseling. Mother's case manager reported that mother had completed 8 of 20 required anger management classes, 4 of 20 required domestic violence classes, and 3 of 15 required parenting classes.[3] Due to mother's inconsistent attendance in her domestic violence and parenting classes, the case manager could not "attest to any additional progress[]" mother had achieved in those programs.

The court held the jurisdiction hearing in late October 2021 and took the matter under submission. In early November, the court sustained the allegations that mother's history of domestic violence and leaving the children alone without adult supervision placed the children at risk of serious physical harm. The court continued the disposition hearing and ordered the Department to provide a written visitation schedule for mother and updates on mother's progress during visits with the children and in her case-related programs.

As of early November 2021, some of mother's visits with Samantha were successful. Nevertheless, mother continued to accompany Israel to the pick-up and drop-off locations for visits with the children. Mother and Samantha's and Savanna's fathers were also having difficulty scheduling visits. Mother provided the

---

[3] The record doesn't indicate why the case manager reported a decrease in the total number of domestic violence and parenting classes that mother had attended since mother's first progress report was issued in June 2021.

Department with a list of days when she was available to visit the children, but she later changed her availability. Mother refused to adjust her schedule to accommodate the other parents' schedules, and Israel was only available to supervise visits during a three-hour period on Saturdays. Israel also refused to monitor some of Amari's visits because he "doesn't like going to Palmdale," where Amari's caregiver lived.

By early December 2021, mother completed 16 of 20 required anger management classes, 7 of 20 required domestic violence classes, and 1 of 15 required parenting classes. Although mother was progressing well in her anger management program, her case manager couldn't provide any meaningful information about mother's progress in the domestic violence and parenting programs because her attendance in those classes was sporadic.

In one of its final last minute reports filed before the disposition hearing, the Department asked the court to grant Savanna's and Samantha's fathers sole physical and legal custody of their daughters. As to mother, the Department recommended providing her monitored visits with Savanna and Samantha, with the visits to be supervised by a professional monitor paid for by mother.

On December 6, 2021, the court held the disposition hearing. As to Samantha and Savanna, the court found the conditions that justified dependency jurisdiction no longer existed. The court awarded Anthony and Dontae sole physical custody of Samantha and Savanna, respectively, with mother and the fathers to share legal custody of the children. The court granted mother monitored visits with her daughters, with the court's "prior orders as to the frequency of [mother's] visits [to] be

6

respected." The court terminated jurisdiction over Samantha and Savanna, pending receipt of custody orders for each child.

On December 17, 2021, the court signed Samantha's and Savanna's exit orders and terminated dependency jurisdiction over the children. As to mother's visits with Samantha, the exit orders provide: "Monitored visits for mother for a minimum of 9 hours per week. Monitor is to be professional monitor paid for by mother. Visits to occur in a neutral setting." As to mother's visits with Savanna, the exit orders provide: "[v]isits to occur only with a professional monitor, where all costs associated with the monitor are paid by Mother." The orders don't specify how frequently mother is entitled to visit Savanna, however, noting only that "[m]other shall have monitored visits in a neutral setting as the parents mutually agree in writing … ."

Mother appeals.

## DISCUSSION

1. **The juvenile court did not abuse its discretion by requiring mother to pay for a professional monitor to supervise her visits with her daughters.**

Mother contends the court abused its discretion when it required her to pay for a professional monitor to supervise her visits with Samantha and Savanna. In mother's view, the court's order unreasonably restricts her right to visit her children and was unnecessary because Israel or Kamry could have continued supervising her visits. We disagree.

After declaring a child a dependent, a juvenile court may terminate jurisdiction if the child is in parental custody and no protective issues remain. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 207.) When a court terminates dependency jurisdiction, "it is

7

empowered to make 'exit orders' regarding custody and visitation." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122 (*T.H.*).) The court's exit orders become part of any family court proceeding concerning the child and will remain in effect until they are modified or terminated by the family court. (*Id.* at p. 1123.)

A juvenile court has broad discretion to make visitation orders tailored to the child's best interests when it terminates dependency jurisdiction. (§ 362.4; see also *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review a juvenile court's exit orders for an abuse of discretion. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456.) Thus, we will not disturb an exit order unless it constitutes an " ' "arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*In re Stephanie M.* (2004) 7 Cal.4th 295, 318.)

As a preliminary matter, mother has forfeited any challenge to the order requiring her to pay for a professional monitor to supervise her visits with Samantha and Savanna. An appellate court " 'ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.' " (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672 (*Daniel B.*).) A parent must raise a specific objection stating the ground or grounds on which the objection is based. (*Ibid.*) A general objection is insufficient to preserve an issue for review. (*Ibid.*) The purpose of this rule is to encourage parties to bring issues to the trial court's attention, so that they may be corrected before the challenged ruling or order is issued. (*Ibid.*)

In one of its final last minute information reports filed before the disposition hearing, the Department asked the court to issue an order requiring mother to pay for a professional monitor

8

to supervise her visits. Mother, therefore, was on notice that the court could order her to pay for a professional monitor should it award her monitored visits. Although mother's counsel argued that the court should award mother joint physical custody of her daughters should it terminate jurisdiction, mother never objected to any aspect of the court's visitation orders, nor did she oppose the Department's request that she pay for a professional monitor to supervise her visits. Thus, mother forfeited any challenge to the order requiring her to pay for a professional monitor to supervise her visits with her daughters. (*Daniel B.*, *supra*, 231 Cal.App.4th at p. 672.)

In any event, mother's claim lacks merit for a few reasons. First, mother's visits throughout these proceedings were problematic, and many of the problems were related to the nonprofessional monitors who mother claims should continue to supervise her visits. Israel allowed mother to visit Samantha unsupervised, and Israel and Kamry allowed mother to accompany them to the children's pick-up and drop-off locations, despite the Department's admonitions not to do so. During some of the visits that were supposed to be supervised, mother made inappropriate remarks in front of the children. For instance, mother coached Samantha about the dependency proceedings and yelled and cursed in front of that child.

Second, contrary to mother's claim that the court should have allowed Kamry or Israel to continue supervising mother's visits, the record does not indicate that either person would be available to supervise mother's visits on a regular basis. In August 2021, Kamry told the Department she could no longer monitor visits because of her work schedule, and Israel was often unavailable or unwilling to monitor visits. Indeed, Israel told the

Department he was only available to monitor visits for a three-hour period on Saturdays.

And finally, mother never presented any evidence below demonstrating she couldn't afford to pay for a professional monitor. Indeed, as we just explained, mother never opposed the Department's request that she pay for one.

In sum, the court did not abuse its discretion when it required mother to pay for a professional monitor to supervise her visits with Samantha and Savanna.

## 2. Savanna's exit order must be corrected to reflect the court's oral order regarding mother's visitation with her daughter.

Mother next contends Savanna's exit order does not define the extent of mother's visitation with Savanna and improperly delegates to the child's father the authority to determine if mother gets to visit her daughter. While we agree that the written exit order fails to specify the extent of mother's visitation with Savanna, the court's oral ruling at the disposition hearing makes clear that the court intended to incorporate mother's existing visitation schedule into its exit orders.

The authority to determine the extent of a parent's visitation resides solely with the court and may not be delegated to the other parent, children, social workers, or other third parties. (*T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) While a court may delegate to third parties the responsibility for managing the details of visits, such as their time, place, or manner, a court may not delegate to third parties the discretion to determine the frequency or length of visits. (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.) A court, therefore, abuses its discretion when it allows a third party to determine whether any visitation

10

will occur. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317.) This rule applies to exit orders issued when the court terminates dependency jurisdiction. (*T.H.*, at p. 1123.)

Here, Savanna's exit order does not define the extent of mother's visitation with Savanna. As noted above, the order provides only that "[m]other shall have monitored visits [with Savanna] in a neutral setting *as the parents mutually agree* in writing." (Italics added.) As courts have recognized, such a vague order can render a noncustodial parent's visitation rights illusory since the custodial parent can limit or even veto the noncustodial parent's visits with her child. (See *T.H.*, *supra*, 190 Cal.App.4th at p. 1123 [order providing for visits "upon the 'agreement of the parents' " effectively delegated to the custodial parent the power to determine whether visitation will occur at all because she "could conceivably agree to only one visit a year or less without violating the letter of the court's order"].)

But, as the Department points out, the court stated at the disposition hearing that "[a]s to mother, prior orders as to frequency of visits shall be respected." Following the detention hearing, the court issued a visitation order allowing mother to visit Savanna three times per week, for three hours each visit. That order remained in place throughout Savanna's proceedings. Thus, it's clear that the court intended to incorporate into Savanna's exit order mother's visitation schedule established at the detention hearing. (See *In re A.C.* (2011) 197 Cal.App.4th 796, 799–800 (*A.C.*) [where there are conflicts between the court's statements in the reporter's transcript and the recitals in the clerk's transcript, we presume the reporter's transcript is more accurate].)

11

In light of the foregoing, we conclude the court did not unlawfully delegate to Savanna's father the authority to determine the extent of mother's visitation with her daughter. Nevertheless, the court must correct Savanna's exit order to reflect mother is entitled to visit Savanna three times per week, for three hours each visit. (*A.C.*, *supra*, 197 Cal.App.4th at p. 800 [remanding matter to the juvenile court to correct exit order so it is consistent with the court's oral order regarding visitation].)

## DISPOSITION

The orders terminating dependency jurisdiction are affirmed. The matter is remanded with directions for the juvenile court to correct Savanna's exit order to reflect mother is entitled to visit Savanna three times per week, for three hours each visit.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

BENKE, J.*

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.