Filed 2/18/26  In re R.P. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re R.P., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.M., <br><br> Defendant and Appellant. | G065529, G065758 <br><br> (Super. Ct. No. 24DP1199) <br><br> O P I N I O N |

Appeals from orders of the Superior Court of Orange County, Daphne Grace Sykes, Judge. Appeal No. G065529 dismissed. Appeal No. G065758 affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the minor.

\*          \*          \*

R.P. (the minor), now 14 years old, expressed "suicidal ideations during and after arguments" with her mother, D.M. (mother). The Orange County Social Services Agency (SSA) initiated a child welfare proceeding. At the termination of the proceeding, the juvenile court vested sole physical and legal custody with the minor's father, J.P. (father). Mother filed two appeals from separate orders of the juvenile court.

The juvenile court's disposition order denied in-person visitation to mother. The appeal from that order is moot because the court's later exit orders granted visitation to mother.

Mother also appeals from an order denying a request to modify the custody and visitation orders. The juvenile court properly found mother had failed to establish the necessary changed circumstances to grant her relief.

Finally, mother appeals from the exit order granting sole legal custody to father. We conclude the juvenile court's order was a proper exercise of its discretion, and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and father have been involved in a long and contentious dissolution proceeding virtually since the minor's birth; the matter was initiated in 2011. The dissolution of their marriage was finalized in 2015, but

2

the custody dispute is ongoing. As of the time this proceeding was initiated, mother and father shared joint custody of the minor.

In September 2024, the minor disclosed suicidal ideation to school staff, connected to an argument with mother. The minor was hospitalized and diagnosed with depression and posttraumatic stress disorder. Hospital personnel reported the minor was visibly distressed by visits or telephone calls with mother. After a visit where mother blamed father for her hospitalization, the minor refused further communication with mother.

The juvenile court issued a protective custody warrant removing the minor from mother's custody and placing her with father. In the detention report, SSA noted that a reintegration therapist ordered by the family court had reported mother "'struggles' with making 'feeling statements' when speaking with the child," blames father for the minor's negative behaviors, speaks negatively about the minor in front of other family members, and speaks negatively about father in front of the minor. The minor's former therapist reported mother was verbally aggressive with the minor and accused father of being bad and brainwashing the minor. Mother's parenting coach also reported mother would not talk about her relationship with the minor, and only talked about father's "'brainwashing'" the minor. SSA recommended that the juvenile court place the minor with father and not permit visitation with mother at that time.

At a detention hearing shortly after the protective custody warrant was issued, the court found a prima facie showing had been made that "[i]t is of immediate and urgent necessity for [the minor's] protection that she be detained under the protective custody of the social services agency. I'm making that finding as to mother only. [¶] The court further finds

there's a substantial danger to the physical or emotional health of the child. There are no reasonable means by which the child's physical or emotional health may be protected without removing the child from . . . the mother's physical custody." The court's findings were supported by the following: "[The minor] is 13 years old. She has a sufficient age to state her preference. She has articulated that in the records. She[] also, through her lawyer, has expressed that preference. And when I have a child that has expressed suicidal ideation or any kind of behavior that's so, so risky, it could be life-threatening, I am going to allow the child to go to where that child is most comfortable and experiences the most peace. I don't care what the custody order was in the past. If the child says I'm comfortable here, I can breathe here, I can think here, I feel better here at this time, that is where the child is going to go because I have to make sure that that child is able to do the things that she needs to do as a young girl, as an eighth grader trying to go to school and feel good about herself in the situation. [¶] This case, most definitely, belongs here, not in family law. The fact that it's languished in family law court over all these years tells me that the parents are engaged in a relationship, if you will, a conflict, if you will, that is just protracted as it's gone on and on. And I think that we're seeing now the result of how it can really affect . . . the child in the middle."

At the jurisdiction hearing, both mother and father pleaded no contest to the petition under Welfare and Institutions Code section 300, subdivision (b)(1).[1] The juvenile court found the allegations of the petition true by a preponderance of the evidence and found the minor to be within the court's jurisdiction.

---

[1] All further statutory references are to the Welfare and Institutions Code.

After a contested disposition hearing, the court declared the minor to be a dependent of the juvenile court, and found by clear and convincing evidence that the best interests of the child required that custody be taken from mother and remain with father. The court ordered that mother would not have in-person visitation with the minor but could have one monitored phone call with the minor every week. The court based its decision on the following:

"I recognize here that both Mom and Dad want what's best . . . for the child, love the child, care for the child. However, this Court is laser-focused on the child more so than the parents even though the parents are important. This Court is in the business, like Mom's attorney said, of reunifying children with families. That's the goal of this Court, but only when it is absolutely safe—that's physically and emotionally; particularly emotionally in this case—to do so.

"Another thing that I've seen and when parents are in high conflict is it is difficult for a child to go back and forth between parents when it's high conflict. A child has a hard time metabolizing all that processing; coming over here on one hand and loving this parent and going over this with the other parent when the child knows the parents don't get along and they don't know who to be loyal to and who to have allegiance to; they can't metabolize that.

"So what children will do sometimes is they'll pick one place to settle in, usually the place that's maybe easiest or less stressful or any number of reasons. They just want to stay in one place; they don't want to go back and forth emotionally.

"The Court agrees with Mom's attorney that it is hard work to deal with these issues. We've got [the minor] in counseling now. A parent's in

counseling. It's hard work to deal with the issues; nobody wants—really wants to do it. Adults don't want to do it. Kids don't want to do it.

"And the Court also agrees with Mom that this distance—this physical distance is—can possibly be even wider if the child is—and this is Counsel's term, I think—allowed to call the shots in the case.

"This Court is basing its decision on what I hinted to earlier and the event that brought us here, which is that this child was at the point of writing down and expressing outwardly thoughts of self-harm, suicidal thoughts. We all know, even as lay people, that that's a cry for help. So arguably, this child was—had we not paid any attention to this—one step away from, you know, maybe not being here.

"She is no longer feeling that way. She has settled in. She is doing much better emotionally. And she, most importantly, detailed exactly what the problem, from her point of view—her 13-year-old point of view, what her problem with her mother is and has been and continues to be.

"And so, for Mom in this case to want to disrupt that peace, particularly after the child was so distraught, that is disconcerting to the Court and it corroborates the evidence and the information that the Court has received that there needs to be more insight on Mom's part.

"The path back to relationship with Mom will occur organically. The Court is not going to order it because I find that that would be detrimental to the child at this time. But I am going to allow Mom to attend all school—there's no reason for her not to be able to attend school meetings, events; but she shall have no unauthorized contact with the child either directly or indirectly at any of those events. So she needs to stay at a distance. If the child is in a game or something, she can just cheer from a distance.

"I'm also going to order that the therapy [for the minor] be in person if the practitioner has that option; I find that is more beneficial. It puts you in a neutral ground, a neutral environment. And I agree with Mom on that point. And I find no reason why Dad can't provide the transportation, really, once a week or once every two weeks, whenever it is. [¶] . . . [¶]

"I'm going to order one monitored phone call per week without a time limit, so—I doubt it's going to be hours long. So however many minutes it is, one hour monitored per week. So the child will continue to be in therapy and that will support, you know, the contact that she has with her mother. And it'll be a safe environment because it is monitored."

Mother filed a timely notice of appeal from the disposition order (appeal No. G065529).

In July 2025, SSA recommended that the juvenile court terminate the dependency proceedings with father retaining sole legal and physical custody of the minor; the minor's counsel supported SSA's recommendation. The court accepted SSA's recommendation and ordered that legal and physical custody and primary residence of the minor be with father. The court also ordered that mother have at least four hours of monitored visitation with the minor every month, as well as 30 minutes of monitored phone calls once a week. Mother agreed with the court's visitation order.

Pursuant to section 388, mother filed a request to change the court's previous no in-person visitation order on the ground mother had made progress in therapy to address the concerns leading to dependency, and in-person visitation would benefit the minor by helping restore the parent-child bond. The request also asked the court to return the minor to mother's physical custody or resume joint physical custody with family counseling to address parental alienation. The court denied the request without a hearing

7

on the ground it failed to state any new evidence or a change of circumstances. The court found: "Mother had her 1st session of therapy on 6/1/25 this is not changed circumstances at best it is in progress." Mother filed a timely notice of appeal from the court's order terminating jurisdiction and its order denying the section 388 petition (appeal No. G065758).

On SSA's motion, this court consolidated the two appeals. Neither father nor the minor appeared on appeal.

## DISCUSSION

### I.

### APPEAL NO. G065529 IS MOOT AND MUST BE DISMISSED

SSA filed a motion to dismiss appeal No. G065529 on grounds of mootness. Mother's challenge to the disposition order in appeal No. G065529 is based on that order's denial of visitation between mother and the minor.

"Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. [Citation.] 'An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence' or is unchallenged. [Citation.]" (*In re L.O.* (2021) 67 Cal.App.5th 227, 237.)

"'A court is tasked with the duty "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."' [Citation.] A case becomes moot when events "'render[] it impossible for [a] court, if it

should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" [Citation.] For relief to be "effective," two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks.' [Citation.]" (*In re S.R.* (2025) 18 Cal.5th 1042, 1051.)

Mootness is decided on a case-by-case basis. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)

SSA argues the appeal of the juvenile court's dispositional order is moot because the issue mother complains about—the court's denial of visitation to mother—has been resolved by the termination order, which authorized in-person visitation and telephonic contact. This case is distinguishable from *In re A.R.* (2009) 170 Cal.App.4th 733 and *In re Dylan T.* (1998) 65 Cal.App.4th 765, on which mother relies to argue the appeal is not moot. In those cases, the visitation orders "infect[ed] the outcome of subsequent proceedings." (*In re Dylan T., supra*, at p. 769; see *In re A.R., supra*, at p. 740.) Mother contends "the error regarding the juvenile court's visitation findings and orders infected the integrity of the entire dependency proceeding." Here, visitation was *increased* in the court's exit orders, discrediting any argument that the lack of visitation in the disposition order affected the court's later orders.

Mother cites *In re C.C., supra*, 172 Cal.App.4th 1481, in which the appellate court addressed the merits of an appeal although it had been mooted by the termination of the child welfare case. (*Id.* at pp. 1488–1489.) That court recognized that an issue in a child welfare appeal is not moot if the challenged error "'infects the outcome of subsequent proceedings.' [Citation.]" (*Id.* at p. 1488.) It addressed the merits of the appeal "in an abundance of caution." (*Id.* at p. 1489.) We express no opinion as to whether

9

the appellate court's decision in *In re C.C.* was appropriate. We do not find such actions to be necessary in this case.

We view mother's claims on this issue to be highly speculative, and we see no reason to ignore the issue of mootness. Appeal No. G065529 is dismissed.

II.

THE JUVENILE COURT PROPERLY DENIED MOTHER'S SECTION 388 REQUEST FOR MODIFICATION WITHOUT AN EVIDENTIARY HEARING

"A section 388 petition must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition." (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.) To make a prima facie showing, the petitioner must demonstrate (1) a genuine change of circumstances or new evidence and (2) that modifying the previous order would be in the best interests of the child. (*In re J.B.* (2025) 109 Cal.App.5th 133, 138–139.)

"We review the summary denial of a section 388 petition for an abuse of discretion." (*In re R.F., supra*, 94 Cal.App.5th at p. 728.)

Here, the trial court found mother had, at most, demonstrated changing, not changed circumstances. The section 388 petition identified the alleged changed circumstances as follows: "Mother has been attending therapy and has made progress in therapy in addressing the concerns of the Court which led to dependency. Mother's progress shows that she is ready to resume in-person visitation with [the minor]. In-person visitation will help Mother and [the minor] to restore their parent-child bond, which will benefit [the minor]." But the documentation supporting the petition demonstrated mother had only been attending therapy for one month. Further, the new therapist expressed concerns about issues such as father's brainwashing of

10

the minor—which were among the issues leading to SSA's recommendation that mother be denied custody and visitation—and suggested "[a]ny time with the father could be grounds for more damage." The therapist's continued focus on the same issues that led to the juvenile court's involvement in the matter might tend to indicate mother's "progress" in therapy was far from complete. The juvenile court's conclusion that the circumstances were changing and not changed is amply supported.

Based on the appellate record, we find no abuse of discretion by the juvenile court in summarily denying the section 388 petition.

### III.

### THE JUVENILE COURT DID NOT ERR IN GRANTING SOLE CUSTODY TO FATHER

Mother argues the juvenile court erred by awarding sole custody of the minor to father when it terminated the child welfare proceedings. In making custody and visitation orders as part of exit orders, the juvenile court has "'broad discretion'" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112), and we will not reverse those orders "'"unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination"'" (*id.* at p. 113).

Mother and father's inability to coparent, which led to the child welfare proceedings in the first place, had not changed, and supported the juvenile court's decision to award sole legal custody to father. There was no dispute that when mother and father had joint custody pursuant to the family court's orders, the minor was in distress.

Through her counsel, the minor expressed the preference that father be granted sole legal custody. At the hearing, minor's counsel advised the juvenile court: "With regard to legal custody, I am in agreement as to order sole legal custody to the father. I did speak to [the minor], and this is

11

what she wants. I think this is a reflection as to, one, her relationship with her mother as well as—as County Counsel stated, the relationship between the parties—between the mother and the father." While the minor's preferences may not dictate the terms of the juvenile court's orders (*In re S.H.* (2003) 111 Cal.App.4th 310, 317–318 [juvenile court may not delegate to the child the power to decide whether visitation occurs]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 48–49 [court erred by giving the child discretion to decide whether visits could occur]), when determining what custody order will be in the minor's best interests, it is not inappropriate for the court to consider the minor's desires (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1402).

The juvenile court's custody order was a valid exercise of its discretion, based on the circumstances of the case.

## DISPOSITION

Appeal No. G065529 is dismissed. The orders in appeal No. G065758 are affirmed.


BANCROFT, J.*

WE CONCUR:


DELANEY, ACTING P. J.


SCOTT, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12