Filed 3/6/25  In re K.G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.G., a Person Coming Under the Juvenile Court Law. | B332626 (Los Angeles County Super. Ct. No. 20CCJP05725C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. PAUL S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Affirmed.

Linda J. Vogel, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Paul S. (father) challenges the juvenile court's order requiring that his visitation with his son be monitored. The requirement was imposed as part of the disposition order after the court sustained a Welfare and Institutions Code section 300[1] petition alleging medical neglect against both parents. We conclude the juvenile court did not abuse its discretion in granting father monitored visitation and affirm.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

**DISCUSSION**

Father and mother[2] have one child together: K.G., born in April 2022. K.G. came to the Department's attention in May 2023 when it received a referral stating that K.G. was the victim of medical neglect. The referral indicated K.G. was diagnosed with congenital hypothyroidism shortly after his birth which had gone untreated in the intervening year.

On June 13, 2023, the Department filed a section 300 petition alleging mother and father medically neglected K.G. by failing to take him to follow-up appointments or administer the medication prescribed to treat his congenital hypothyroidism. The petition alleged that, if left untreated,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother is not a party to this appeal and no one has challenged the juvenile court's jurisdictional findings or dispositional orders as to mother.

congenital hypothyroidism could lead to cognitive disabilities and developmental delays in K.G.

An investigation by the Department of Children and Family Services (Department) revealed K.G. was, in fact, significantly developmentally delayed in several ways, including his small stature, inability to walk or crawl, lack of teeth, and inability to meet developmental milestones in motor skills and problem-solving. On September 5, 2023, the juvenile court sustained the one count alleged against father for medical neglect. At the disposition hearing, the court removed K.G. from the parents' care and ordered father to undergo training in child care, medical neglect, and K.G.'s medical needs. The court also granted father three monitored visits with K.G. per week. Father timely appealed.

On appeal, father only challenges the portion of his case plan that required his visitation with K.G. to be monitored rather than unmonitored.

I. *Father Did Not Forfeit His Challenge to Monitored Visitation*

The Department argues father has forfeited any challenge to the juvenile court's order for monitored visitation because he failed to object to that aspect of his case plan at the dispositional hearing. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].) At the disposition hearing, father objected to K.G.'s placement with the maternal grandmother and requested that K.G. be released to his care. Father also objected "to the proposed case plan." The Department argues this objection was insufficient because father did not specifically object to the requirement that his visitation be monitored.

3

We find no basis for forfeiture here. It is undisputed that father objected to the case plan proposed by the Department. It is also undisputed that the case plan proposed by the Department included the recommendation that the parents' visitation be monitored. By objecting to the proposed case plan, father necessarily objected to the requirement that his visits with K.G. be monitored.

The Department also argues we can find a forfeiture because father failed to object to the monitoring requirement after the court issued father's case plan. A party does not have to object to preserve an issue for appellate review when it would have been futile to do so. (See *People v. Arias* (1996) 13 Cal.4th 92, 159; *People v. Sandoval* (2001) 87 Cal.App.4th 1425, 1433, fn. 1.) As the juvenile court overruled father's objection in ordering monitored visitation, we conclude it would have been futile for father to raise a second objection after the court issued its order on father's case plan. As father has not forfeited his objection to monitored visitation, we will address the merits of his appeal.

II. *Applicable Law and Standard of Review*

The purpose of the dependency law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 362 authorizes the juvenile court to "direct any reasonable orders to the parents" of a dependent child as the court deems necessary and proper to ensure

appropriate care, supervision, and support of the child. (§ 362, subds. (a) & (d).)

In crafting visitation orders, the court is guided by the principle that "[v]isitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A); *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138.) Of equal importance, however, is the statutory directive that "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) The juvenile court must balance the "interests of the parent in visitation with the best interests of the child" and "impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) In balancing these interests, "the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; *In re John W.* (1996) 41 Cal.App.4th 961, 965.) "[T]he parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense." (*In re S.H.* (2003) 111 Cal.App.4th 310, 317.)

"Visitation orders in dependency cases are typically reviewed for abuse of discretion and will not be reversed absent a 'clear showing of an abuse of discretion.'" (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119.) Exercise of the court's broad discretion in this area must be "'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) The standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.) A court abuses its discretion when it makes a determination that is "'arbitrary, capricious, or

patently absurd.'" (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759, quoting *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.) "'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.)

III.   *The Court Did Not Abuse its Discretion in Granting Father Monitored Visitation*

Father argues the juvenile court abused its discretion in ordering that father's visits with K.G. be monitored rather than unmonitored. Father argues that there is no benefit to K.G. for requiring monitored visitation. We find no abuse of discretion by the juvenile court.

There is abundant evidence in the record justifying the juvenile court's decision to require monitored visitation for father. We note father does not challenge the aspects of his case plan that require him to undergo training in child care, medical neglect, and K.G.'s medical needs. Father also does not challenge the trial court's dispositional order requiring him to "demonstrate an understanding of the child's medical needs and how to care for them." The same concerns that justified these counseling and training aspects of father's case plan also justified the monitoring requirement for his visits with K.G.

Father argues "The only conceivable risk to K.C. [*sic*] of medical neglect by Father during a visit would involve administration of K.C.'s [*sic*] once-a-day medication. And even that remote and unlikely risk could be eliminated by administering the medication before or after a visit." This argument is unconvincing. Father offers no support for his assertion that the only medical care K.G. will ever require will be the administration of medication once per day. Further, it is clear from the record that K.G.'s medical needs

6

extend beyond the need to take medication once per day. Father ignores the fact that K.G. has been prescribed two different medications which must be taken at different times of the day. K.G. is also significantly developmentally delayed and nonverbal, making him vulnerable to future neglect.

This is particularly relevant as father demonstrated a lack of understanding of normal child development. Multiple witnesses voiced concerns to the Department about K.G.'s development, specifically pointing to K.G.'s small stature, lack of teeth, and inability to crawl or walk. The Department argued that K.G.'s lack of teeth alone "should have been a red flag to any parent with a baseline knowledge of a child." Yet father had no concerns with K.G.'s development and made no effort to obtain medical care for the child. When directed by a doctor to take K.G. to his primary care physician for examination, father did nothing even though he was aware that K.G. might have a medical condition that would have adverse consequences if left untreated.

Father argues he cannot be held responsible for this failure to take K.G. for a recommended medical appointment because he "left K.C.'s [*sic*] medical treatment in Mother's hands, notwithstanding whatever the dependency investigator told him about K.C.'s [*sic*] medical risk." But this underscores why the juvenile court was justified to require that father's visits be monitored: father had not demonstrated he understood and could meet K.G.'s medical needs. Instead, he relied on others to care for K.G. In fashioning visitation orders, K.G.'s needs and safety take priority over father's preference to remain uninvolved in his son's medical care.

Father also had a well-documented history of failing to participate meaningfully in K.G.'s care. The record is replete with instances of father being hostile and refusing to communicate or cooperate with the Department

during the investigation. When the Department tried to contact father to set a visitation schedule, father refused to speak to the Department social worker.[3] When K.G. was approved to receive Early Start educational services to ameliorate his developmental delays, father refused to sign an authorization allowing K.G. to participate in those services.[4] When ordered by the court to appear for the disposition hearing, father stopped communicating with his counsel and failed to appear as directed.

Simply put, there was ample evidence in the record suggesting that father did not have the ability or willingness to properly care for K.G., who is particularly vulnerable given his age, special needs, and inability to communicate. On such facts the juvenile court was well within its discretion to require father's visits be monitored to ensure K.G.'s safety.

//

//

//

//

//

//

//

//

---

[3]    As a result of father's refusal to cooperate in setting a visitation schedule, he visited K.G. significantly less than the three visits per week ordered by the juvenile court.

[4]    K.G.'s maternal grandmother was subsequently appointed as an educational rights holder for K.G. so she could sign the authorization allowing him to start the Early Start services.

## DISPOSITION

The juvenile court's order requiring father's visits with K.G. to be monitored is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


COLLINS, J.


MORI, J.