Filed 6/18/26  In re M.H. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.H. et al., Persons Coming Under the Juvenile Court Law. | B347388<br><br>(Los Angeles County<br>Super. Ct. No. 24CCJP01744B–D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GABRIELA P.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra L. Losnick, Judge.  Affirmed.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louis, Assistant County Counsel, and Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Gabriela P. (mother) appeals the juvenile court's order granting sole physical custody of her three youngest children to Jose R. (father) and granting her monitored visitation with the children three times a week for three hours. Mother contends the court improperly focused on mother's noncompliance with her case plan, rather than the best interests of the children, and improperly delegated authority over visitation to father. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father are the parents of M.H. (born August 2015), M.P. (born October 2017), and J.P. (born August 2019).[1] Mother also has a teenaged son, A.P., and an adult daughter.

In 2017, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging "emotional abuse" between mother and father, which it closed as "inconclusive." Between July 2016 and January 2024, DCFS received five referrals alleging that mother abused alcohol or drugs. DCFS closed four of these referrals as "inconclusive" and one as "unfounded." Three of the referrals alleged that mother

---

[1] The juvenile court found father to be the children's presumed father. Mother initially stated that father is the biological father of all three children, but later claimed he is not the biological father of M.P. and J.P. M.P. and J.P.'s alleged biological father was not involved in the dependency proceedings and the juvenile court made no other parentage findings.

drove with one or more of her children in the car while she was under the influence of alcohol.

In April 2024, DCFS investigated the family after receiving a report that mother and father were involved in a physical altercation, during which mother scratched father's arm and broke the window of his car. The incident occurred when father came to mother's home to drive the children to school. After undergoing voluntary drug testing, mother tested positive for cocaine. Mother denied using cocaine. Mother had also been arrested for driving under the influence (DUI) in 2023 and was on probation, which she failed to disclose to the investigating social worker. Mother said "the DUI occurred due to issues with father."

DCFS filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1), alleging that mother's violent conduct towards father and her abuse of alcohol and cocaine endangered the children's physical health and safety, and father had failed to protect the children.[2] DCFS recommended that the children remain in mother's home and that mother participate in individual counseling, parenting classes, a domestic violence program, and a substance abuse rehabilitation program. DCFS also asked the court to order mother to submit to random drug and alcohol testing.

At the June 20, 2024 initial hearing, the juvenile court found a prima facie case existed, but services were available to prevent the children's detention.

---

[2] All further statutory references are to the Welfare and Institutions Code. DCFS included A.P. in the petition, but this appeal does not concern him. We discuss only the facts relevant to the other minor children.

3

In July 2024, mother tested positive for cocaine a second time.  When social workers questioned mother about the positive drug test, she denied any substance use, then "deflected and began to attribute her current circumstances to [a] family friend."  In August 2024, DCFS filed an application pursuant to section 385 to detain the children from mother and place them with father, which the juvenile court granted.

In an interview for the detention report, mother claimed she had completed a drug and alcohol program in connection with her DUI case.  However, the service provider stated that it could not release letters of completion to DCFS " 'because [mother] never finished.' "  Mother continued to deny that she used drugs and stated she would not enroll in services unless ordered to do so by the court.

At the August 19, 2024 hearing on the section 385 application for detention, the juvenile court found there were no reasonable means of protecting the children without removing them from mother's home.  The court ordered the children released to father.  It observed that mother was "in the apparent [throes] of relapse," which she was "actively denying."  The court further indicated that "mother's substance use is a likely driver in what gave rise to [the] petition."

At the September 13, 2024 jurisdiction and disposition hearing, the juvenile court sustained the petition.  The court ordered mother to participate in weekly random drug and alcohol testing, a 12-step program, a full substance abuse program, a 52-week domestic violence program, a parenting program, and individual counseling.  It also ordered monitored visitation for mother three times a week.

In the six-month status review report, the social worker stated that she had difficulty communicating with mother, as mother's phone was often disconnected or she would change her number. Mother was not cooperative with the social worker's attempts to meet and "would get defensive." Although mother had enrolled in a substance abuse treatment program, the service provider reported that mother was "struggling with attendance" and was "in denial about her drug use." Mother claimed to have "transportation issues," but declined the service provider's offers of transportation assistance. Over the course of approximately one month, mother tested positive for cocaine, THC, methamphetamines, and alcohol. When asked about the positive test results, mother was "dismissive." In January 2025, the treatment program discharged mother due to her noncompliance and poor attendance. Mother had not completed weekly drug testing with DCFS or enrolled in a domestic violence program. Mother did not visit the children for over two months. When mother began visiting them, she arrived late to visits or left early, cancelled at the last minute, and failed to show up without notice.

The social worker reported that father was providing the children with a safe, stable, and loving home environment. A service provider stated that father was "very cooperative," "fully engaged in [family preservation] services," "receptive to tips . . . [and] continue[d] to make progress," and shared a "close relationship" with the children. Father had also recently started individual counseling. M.H. stated that she felt safe in father's home and enjoyed being there.

At the March 21, 2025 review hearing, the juvenile court ordered further services for mother and father.

In an interview for the next status review report, "[m]other was being evasive and was not being truthful with [the social worker] regarding her place of residence." Mother claimed both that she was still residing in Los Angeles and that she had moved to New York. Mother failed to attend another visit with the children without providing notice, which upset M.H. However, father reported that mother called the children on a regular basis. While enrolled in a second substance abuse treatment program, mother tested positive for cocaine, THC, and alcohol. The service provider stated that mother's "participation was very spotty and was not really consistent," which he attributed to the fact that "mother was in a toxic, co-dependent relationship with her partner (name not given) which would affect mother's concentration in class, attendance[,] and cause mother anxiety." Mother enrolled in a third treatment program after moving to New York but missed multiple sessions. When the service provider attempted to contact mother regarding a missed session, mother's phone number was disconnected.

Father continued to provide the children with a safe, stable, and loving home environment. He and the children appeared to have a strong bond, and the social worker described father as "nurturing, patient and attentive" and "very active with the children's educational and medical needs." M.H. and M.P. stated that they were doing well and felt safe in father's home. Father's therapist reported that father had completed 14 counseling sessions and participated well. Father found the counseling beneficial and "ha[d] learned how to identify the cycle of domestic violence, how to verbally communicate without using violence, [and] the negative effects that domestic violence has on

children." The social worker observed that the family had "made significant progress" and met its goals.

At the June 27, 2025 status review hearing, the juvenile court found that father had been meeting the children's needs and complying with his case plan. Mother's compliance with her case plan was "not very good." The court rejected mother's request for additional time to participate in services and stated: "Over the mother's objection, I am going to close the case today because conditions no longer exist. And that is because we have a custodial parent that has complied with his family maintenance and the children have done very well under his care." The court granted sole physical custody to father and joint legal custody. The court ordered monitored visits for mother on the same schedule she had during the pendency of the case (i.e., three times a week for three hours).

On July 1, 2025, the juvenile court issued the written custody and visitation order.

Mother timely appealed.

## DISCUSSION

### I. The Juvenile Court's Custody and Visitation Order Was Not An Abuse of Discretion

Mother contends the trial court abused its discretion in granting sole physical custody to father because it improperly focused on mother's lack of compliance with the case plan rather than the best interests of the children. She further contends the visitation order was an abuse of discretion because it did not specify who would monitor mother's visitation, but "left it up to the father, as the individual with sole physical custody, to decide." Mother claims this constituted an improper delegation of visitation authority to father.

"When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') . . . .  When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.'  [Citations.]"  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513, fn. omitted.)  We review the juvenile court's exit order for abuse of discretion and "will not disturb the order 'unless the court " ' " exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' [Citation.]"  (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*).)

We find no abuse of discretion in the court's juvenile custody order.[3]

### A.     Mother fails to establish that the juvenile court based the custody order on improper factors

Mother contends the juvenile court abused its discretion by granting sole physical custody of the children to father based on mother's noncompliance with the case plan, rather than considering the children's best interests.  We disagree.

Mother relies on *N.M.*, *supra*, 88 Cal.App.5th 1090, which is distinguishable.  In that case, the juvenile court declined to award joint legal and physical custody to the non-offending father, who had not completed a case plan requiring drug testing and a parenting course.  (*Id.* at pp. 1092–1093.)  When issuing its

---

[3]     Mother concedes that she failed to object to the custody and visitation order below.  Although mother's arguments are therefore forfeited, we exercise our discretion to resolve her appeal on the merits.  (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.)

juvenile custody order, the juvenile court stated: " 'Did [father] do his case plan? No, so I'm sorry. It's not appropriate to reward a parent who does nothing in this court, so I'm not going to make it joint legal.' " (*Id*. at p. 1093.) The appellate court concluded "[t]his was an abuse of discretion because an exit order must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Id*. at p. 1095.) It noted that the juvenile court had not made an express best-interests finding and "no grounds appear[ed] for an implied finding" that the father's failure to complete the case plan impacted the children's interests. (*Ibid*.)

Here, the juvenile court did not suggest it was granting father sole physical custody to avoid rewarding mother for her noncompliance with the case plan. In the absence of evidence to the contrary, we will not presume the juvenile court's order was based on improper considerations. (*People v. Jones* (2017) 3 Cal.5th 583, 616 [reviewing court presumes lower court knows and applies correct statutory and case law].)

Further, *N.M.* did not hold that an order granting a parent sole physical custody must be reversed in the absence of an express best-interests finding. The juvenile court's statement that "the children have done very well under [father's] care" indicates that it considered the children's best interests when granting father sole physical custody. There are also ample grounds for an implied best-interests finding. Unlike the father in *N.M.*, mother was an offending parent based on her violence against father and her use of alcohol and cocaine.[4] The court

_____

[4]    Mother claims that the domestic violence at issue in the petition was "mutual." Although the petition described prior

9

previously found that "mother's substance use is a likely driver in what gave rise to [the] petition." Despite a DUI arrest and multiple positive drug and alcohol tests, mother denied that she had substance abuse issues and blamed others for her circumstances. She failed to regularly participate in any treatment program and did not enroll in a domestic violence program. The record further indicates mother was in another "toxic" relationship. Additionally, there were reports that mother had previously driven the children while she was under the influence.[5] The juvenile court could reasonably conclude that mother had not addressed the issues that led to the dependency proceeding in a meaningful way, and the children would be at continued risk of harm in her care. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."].) In contrast, father had gained insight into the dynamics of his relationship with mother and provided stability to the children, who were doing well in his care.

The juvenile court did not abuse its discretion in granting sole physical custody of the children to father.

---

incidents where father pushed mother and grabbed her neck, it alleged: "Such violent conduct *on the part of the mother towards* [*father*] endangers the children's physical health and safety . . . ." (Italics added.) The juvenile court "sustained an (a) count, showing that the mother was the perpetrator," and ordered mother's case plan to address that sustained allegation.

[5] Although this report was originally in a referral DCFS found inconclusive, a witness interviewed in this case reported the incident and said other people were also aware of mother driving the children while she was impaired.

## B. The juvenile court's visitation order did not improperly delegate authority to father

Mother also fails to establish that the juvenile court improperly delegated visitation authority to father by failing to specify a monitor.

"[T]he power to decide whether *any* visitation occurs belongs to the court alone. [Citations.] When the court abdicates its discretion in that regard and permits a third party, whether social worker, therapist or the child, to determine whether any visitation will occur, the court violates the separation of powers doctrine." (*In re S.H.* (2003) 111 Cal.App.4th 310, 317–318, fn. omitted.) The juvenile court may delegate authority to a third party "to decide the time, place, and manner in which visitation will take place," but should generally specify the frequency and duration of visits. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274; but see *In re S.H.*, at p. 319 [declining to "suggest[] either that the juvenile court must always specify the frequency or length of visits"].)

The juvenile court ordered monitored visitation for mother three times a week for three hours. It did not delegate to father the authority to determine whether visitation would occur or the frequency or duration of mother's visits with the children. To the extent the exit order "left the [monitor] issue exclusively in the father's hands," as mother claims, it is comparable to the order in *In re A.C.* (2011) 197 Cal.App.4th 796. There, the juvenile custody order provided that the father would choose the monitor if the parents were unable to agree. (*Id.* at p. 800.) The Court of Appeal concluded the order did not improperly give the father the right to determine whether visitation would occur. (*Ibid.*) The same is true here. Mother fails to cite any decision invalidating a

visitation order because the juvenile court did not specify the monitor or delegated that choice to the custodial parent.

Mother's reliance on *In re T.H.* (2010) 190 Cal.App.4th 1119 is misplaced. In *T.H.*, the juvenile court granted supervised visitation to the non-custodial father "but only upon the 'agreement of the parents.' " (*Id.* at p. 1123.) The appellate court observed that the language of the visitation order would permit the custodial mother to "agree to only one visit a year or less without violating the letter of the court's order." (*Ibid.*) The order "effectively delegate[d] to mother the power to determine whether visitation will occur at all," even though the mother had objected to the father having any visitation. (*Ibid.*) The juvenile court had therefore "abused its discretion by framing its order in a way that gave mother an effective veto power over that right." (*Id.* at p. 1124.)

We reject mother's claim that the visitation order here is similarly "illusory." There is no indication in the record that father ever objected to mother having visitation with the children. He consistently brought the children to their visits on time and facilitated phone calls between mother and the children when mother moved to New York. Moreover, the order here did not permit father to withhold his consent to the weekly visits. There was no abuse of discretion.

12

## DISPOSITION

The juvenile court order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.